Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| VRH PROPERTIES, INC. Y OTROS<br><br>Apelantes<br><br>v.<br><br>SANTANDER FINANCIAL SERVICES, INC. Y OTROS<br><br>Apelados | KLAN202400833 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Sobre: Incumplimiento Contractual<br><br>Caso Núm. SJ2021CV04076 |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de febrero de 2026.

La parte apelante, VRH Properties Inc., Law Offices of Hernández López de Victoria, PSC, el señor Juan J. Hernández López De Victoria y la señora Mireidi Méndez Falcón, comparece ante nos para que dejemos sin efecto la *Sentencia* emitida el 12 de julio de 2024 y notificada el día 15 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante esta, el foro primario desestimó la *Demanda* presentada por la parte apelante en contra de la parte apelada, Banco Santander Puerto Rico (posteriormente, FirstBank Puerto Rico), Santander Financial Services, Inc., Planet Home Lending, LLC.[1] A su vez, declaró *Ha Lugar* la *Reconvención* presentada por Planet Home Lending, LLC. Ello dentro de un pleito sobre incumplimiento contractual.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

---

[1]El 1 de septiembre de 2020, FirstBank Puerto Rico adquirió los derechos y obligaciones de Banco Santander de Puerto Rico como resultado de una fusión. A tenor con ello, el 16 de agosto de 2021, presentó una *Moción de Solicitud de Sustitución de Parte.*

Número Identificador

SEN2026 _____

**I**

El 30 de junio de 2021, la parte apelante presentó la *Demanda* de epígrafe. En ella, alegó que, en el año 2012, Law Offices of Hernández López De Victoria, P.S.C. (en adelante, Law Offices) suscribió con Banco Santander de Puerto Rico (en adelante, Banco Santander) un Contrato de Línea de Crédito Ágil (en adelante, *Línea de Crédito*) para propósitos de capital de trabajo u operacional, sin fecha de vencimiento, con un máximo a desembolsar de noventa mil dólares ($90,000.00) y una tasa de interés de cinco por ciento (5%) sobre la tasa preferencial variable.

Añadió que, el 28 de febrero de 2013, VRH Properties, Inc. (en adelante, VRH Properties) y Banco Santander suscribieron un Contrato de Préstamo Comercial tipo "balloon" (en adelante, *Préstamo Comercial*) por la suma de ciento veintiséis mil dólares ($126,000.00), pagadero en plazos mensuales y con vencimiento el 28 de febrero de 2018, fecha en la cual sería renovado por acuerdo entre las partes, con una tasa de interés de siete punto cinco por ciento (7.5%). Indicó que dicho préstamo fue evidenciado mediante un *Pagaré Hipotecario*, garantizado con una hipoteca constituida sobre un inmueble propiedad de VRH Properties, localizado en la urbanización El Cerezal, en San Juan, Puerto Rico.  Esbozó, además, que el *Préstamo Comercial* fue garantizado solidariamente por Law Offices, el señor Hernández López De Victoria y la señora Méndez Falcón, quienes a su vez dieron en prenda el *Pagaré Hipotecario* al Banco Santander.

La parte apelante alegó que, posteriormente, el 17 de marzo de 2015, suscribió con Banco Santander un documento intitulado *Extensión y Plan de Pagos*, mediante el cual acordaron refinanciar y consolidar los balances pendientes de la *Línea de Crédito* y del *Préstamo Comercial* en un solo préstamo comercial por la suma de doscientos ocho mil ciento diecinueve dólares con treinta y nueve

centavos ($208,119.39), identificado con el número 7006713968 (en adelante, *Crédito Consolidado*).

La parte apelante manifestó que, con motivo del paso del Huracán María, se le concedió una moratoria de pagos y que, posteriormente, ante la intensificación de la pandemia del COVID-19, obtuvo una segunda moratoria. Señaló, además, que a partir del 2 de marzo de 2020, Banco Santander inició gestiones dirigidas a procesar la renovación del *Crédito Consolidado*. Indicó que, luego de varios trámites, el 12 de mayo de 2020, suscribió con Banco *Santander* una *Enmienda al Pagaré y Contrato de Préstamo Comercial por Acuerdo de Moratoria COVID-19* (en adelante, Enmienda por Moratoria), mediante la cual se estableció el 17 de agosto de 2020 como la fecha de vencimiento del *Crédito Consolidado*.

Según sostuvo la parte apelante, durante los meses de junio, julio y hasta mediados de agosto de 2020, continuó atendiendo los requerimientos del banco para la renovación del *Crédito Consolidado*. Alegó que, según las conversaciones sostenidas para tal fin, el banco le comunicó que la tasa de interés aplicable sería de seis punto cinco por ciento (6.5%) y que únicamente quedaba pendiente la reconciliación del historial de pagos para resolver una disputa sobre el monto adeudado.

No obstante, alegó que, el 19 de agosto de 2020, antes de que se suscribieran los documentos finales de la renovación, fue informada de que el *Crédito Consolidado* había sido vendido a Santander Financial Services, Inc. (en adelante, Santander Financial), sin que se le proveyera evidencia de la cesión, ni se reconociera el alegado acuerdo alcanzado con Banco Santander.

Según la parte apelante, posteriormente se le informó que Santander Financial no honraría el acuerdo alegadamente alcanzado con Banco Santander y que la única alternativa para

renovar el *Crédito Consolidado* consistía en suscribir un documento judicial intitulado *Reconocimiento de Deuda, Acuerdo para Repago y Sentencia por Consentimiento ante Incumplimiento* (en adelante, *Sentencia por Consentimiento*). Sin embargo, añadió que, en medio de las gestiones dirigidas a formalizar la renovación del préstamo, el 24 de mayo de 2021, recibió una notificación mediante la cual se le informó que Planet Home Lending, LLC. (en adelante, Planet Home), sería el nuevo administrador del *Crédito Consolidado*.

Así las cosas, expresó que, el 1 de junio de 2021, recibió una comunicación escrita de Planet Home requiriendo el pago de dieciocho mil ochocientos sesenta y seis dólares con cincuenta y siete centavos ($18,866.57) para actualizar el *Crédito Consolidado*, sin referencia alguna a su vencimiento o renovación. Además, se le informó que la única forma de renovar el préstamo era si se suscribía una *Sentencia por Consentimiento*. Ante ello, sostuvo que, en respuesta, remitió una versión editada de la *Sentencia por Consentimiento* con los términos que consideraba aceptables, junto con una oferta de pago condicionada a la aceptación de dichos cambios. Sin embargo, alegó que dicha oferta fue rechazada y que se le comunicó que no se aceptarían modificaciones.

A tenor con sus alegaciones, la parte apelante presentó la Demanda de epígrafe, mediante la cual solicitó que el Tribunal de Primera Instancia determinara cuál de las entidades demandadas era la acreedora del préstamo. Asimismo, interesó que se ordenara el cabal cumplimiento de los acuerdos alegadamente alcanzados con Banco Santander para la renovación del *Crédito Consolidado*, incluyendo la aplicación de una tasa de interés anual de seis punto cinco por ciento (6.5%), sin tener que aceptar la *Sentencia por Consentimiento*. En la alternativa, solicitó ejercer el retracto de crédito litigioso con el fin de satisfacer la deuda. Además, reclamó daños, intereses y honorarios por temeridad, por una suma no

menor de veinticinco mil dólares ($25,000.00). A su vez, y en atención a la controversia existente sobre el monto adeudado respecto al *Crédito Consolidado*, la parte apelante consignó en la Secretaría del Tribunal la suma de veinte mil quinientos cincuenta y ocho dólares con sesenta y cuatro centavos ($20,558.64), para su custodia.

El 4 de agosto de 2021, compareció Santander Financial, mediante la presentación de su *Contestación a Demanda*. En dicho escrito, negó las alegaciones formuladas en su contra y articuló varias defensas afirmativas. En particular, sostuvo que el crédito objeto de la presente controversia, no pertenecía ni a Banco Santander ni a Santander Financial, toda vez que la acreencia y sus garantías habían sido transmitidas a Planet Home. En consecuencia, solicitó al Tribunal de Primera Instancia que declarara sin lugar la *Demanda* presentada por la parte apelante y que se impusiera el pago de costas, gastos y honorarios de abogado.

Por su parte, el 7 de septiembre de 2021, FirstBank Puerto Rico (en adelante, FirstBank) presentó su *Contestación a la Demanda*. En su escrito explicó que el 1 de septiembre de 2020, Banco Santander de Puerto Rico se fusionó con FirstBank, como resultado de lo cual adquirió los derechos y obligaciones de la entidad fusionada. No obstante, negó las alegaciones formuladas en su contra y sostuvo que, al momento de la antes mencionada fusión entre las entidades bancarias, la línea de crédito objeto de la presente controversia, ya había sido traspasada a Santander Financial, por lo que no contaba con documentos necesarios para corroborar los detalles de la referida línea de crédito.

A su vez, FirstBank aceptó que, desde principios del año 2020, Banco Santander, a través de la señora Santana Hidalgo, mantuvo comunicaciones con la parte apelante para la solicitud de documentos y orientación relacionada con la evaluación de una

posible renovación del *Crédito Consolidado*. No obstante, alegó que dichas gestiones no culminaron en acuerdo alguno. Ante ello, adujo que la parte apelante tenía la obligación de continuar efectuando los pagos correspondientes de un crédito que había vencido el 17 de agosto de 2020. Finalmente, insistió en que no hubo incumplimiento contractual alguno por parte de Banco Santander ni de Santander Financial, y que no se alegaron actos específicos atribuibles a FirstBank que justificaran la concesión de un remedio a favor de la parte apelante. Consecuentemente, solicitó la desestimación de la *Demanda* de epígrafe.

Por otro lado, el 21 de septiembre de 2021, Planet Home presentó una *Réplica a la Demanda y Reconvención*. En lo pertinente a la demanda, reconoció la existencia de los negocios jurídicos celebrados entre Banco Santander y la parte apelante en relación con la *Línea de Crédito* y el *Préstamo Comercial*, este último garantizado mediante hipoteca sobre el inmueble de VRH Properties, así como la posterior consolidación de dichas obligaciones en el *Crédito Consolidado*. Añadió que, una vez asumió la administración del *Crédito Consolidado*, sostuvo comunicaciones con la parte apelante dirigidas a evaluar una posible renovación del préstamo, no obstante, afirmó que dichas gestiones no culminaron en acuerdo alguno. Por otra parte, sostuvo que la consignación no procedía, al no haberse realizado un ofrecimiento de pago conforme a lo dispuesto en el Artículo 1131 del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, según enmendado, 31 LPRA sec. 9181.

En cuanto a la reconvención, alegó que la parte apelante incumplió con las obligaciones asumidas bajo el *Crédito Consolidado*. Ante ello, afirmó que el balance adeudado ascendía a ciento noventa y dos mil trescientos un dólares con cincuenta y ocho centavos ($192,301.58), por concepto de principal, más diecinueve mil cuarenta y siete dólares con cuarenta y cinco centavos

($19,047.45) en intereses vencidos al 14 de septiembre de 2021, así como aquellos que se continuaran acumulando hasta su total pago o solvento. Además, reclamó la suma de doscientos treinta y cinco dólares con ochenta centavos ($235.80) por cargos por retraso, así como aquellos que se continuaran acumulando, más el diez por ciento (10%) del principal por concepto de costas, gastos y honorarios de abogado, como partida líquida según estipulado por las partes. En consecuencia, interesó que se condenara a la parte apelante al pago de dichas sumas y, de no efectuarse el pago, que se ordenara la ejecución del pagaré hipotecario dado en prenda y la venta del inmueble en pública subasta hasta la suma garantizada, permaneciendo la parte apelante responsable por cualquier deficiencia o balance pendiente.

En respuesta, el 12 de octubre de 2021, la parte apelante presentó su *Réplica a Reconvención de Planet Home*. En esencia, sostuvo que, como en todo préstamo comercial tipo "balloon", entre las partes medió un acuerdo que contemplaba la renegociación del *Crédito Consolidado* previo a su vencimiento. Adujo, además, que las instituciones financieras involucradas conocían de las gestiones dirigidas a la renovación del referido crédito, por lo que no podían contravenir sus obligaciones a tenor con el principio de buena fe contractual. Como defensas afirmativas, planteó que Planet Home, en su carácter de administrador del préstamo, carecía de legitimación activa para instar la reconvención. Asimismo, invocó su derecho al ejercicio del retracto de crédito litigioso.

Acaecidas varias incidencias procesales innecesarias de pormenorizar, el 1 de diciembre de 2023, FirstBank presentó una *Moción de Sentencia Sumaria*.[2] En síntesis, reprodujo los

---

[2]FirstBank Puerto Rico acompañó su *Moción de Sentencia Sumaria* con la siguiente prueba documental: 1) Escritura Núm. Once (11) intitulada *Hipoteca en Garantía de Pagaré*; 2) Pagaré Hipotecario; 3) *Garantía* suscrita por Juan José Hernández López De Victoria y Mireidi Méndez Falcón; 4) *Garantía* suscrita por Law Offices of Hernández López De Victoria, PSC.; 5) *Contrato de Prenda* suscrito

planteamientos expuestos en su *Contestación a la Demanda*. En particular, insistió en que no era el acreedor del crédito objeto de la controversia ni tenía obligación alguna con relación a su renovación. Señaló que la parte apelante no identificó ni acreditó la aceptación y consentimiento de Banco Santander respecto a un supuesto acuerdo de renovación para con el *Crédito Consolidado*. A su vez, planteó que, del *Pagaré Hipotecario*, surgía una cadena de endosos mediante la cual Banco Santander endosó el instrumento a Santander Financial, y que esta última, a su vez, lo endosó a Luna Commercial II, LLC. (en adelante, Luna Commercial), entidad que, según alegó, era la acreedora actual del préstamo. Indicó que Planet Home actuaba como administrador del crédito de Luna Commercial y que, en tal carácter, realizaba las gestiones de cobro. Finalmente, sostuvo que la parte apelante no imputó incumplimiento alguno a FirstBank. Ante ello, peticionó al Tribunal de Primera Instancia que dictara sentencia sumaria en su favor y, en consecuencia, desestimara la causa de acción en contra de FirstBank.

En esa misma fecha, el 1 de diciembre de 2023, Santander Financial y Planet Home presentaron una *Moción de Sentencia Sumaria.* En lo pertinente, alegaron que las partes nunca alcanzaron un acuerdo de renovación del *Crédito Consolidado*, pues, conforme surge de la propia *Demanda*, no se suscribió documento alguno con posterioridad al 17 de agosto de 2020, fecha establecida como vencimiento del préstamo mediante la Enmienda por Moratoria. Añadieron que, aunque existieron comunicaciones dirigidas a una posible renovación del referido *Crédito Consolidado*, estas no culminaron en acuerdo alguno, toda vez que la parte

---

entre Banco Santander Puerto Rico, VRH Properties, Inc. y Law Offices of Hernández López De Victoria, PSC.; 6) Correo electrónico de Jelissa Santana Hidalgo a VRH Properties, Inc.; 7) Certificate of Merger; 8) Parte de una deposición tomada a la parte apelante; 9) *Notificación sobre transferencia de administración de su préstamo comercial* de Planet Home Lending, LLC a Law Offices of Hernández López De Victoria, PSC.

apelante se negó a suscribir el documento intitulado *Sentencia por Consentimiento*, condición requerida para formalizar cualquier acomodo sobre una obligación que ya se encontraba vencida. A base de lo anterior, insistieron en que no podía imputarse incumplimiento de un acuerdo que no existía. Al considerar que no había controversia real y sustancial de hechos materiales y expresar que la parte apelante había procedido con temeridad, solicitaron que se dictara sentencia sumaria desestimando la demanda en su contra, más las costas y los honorarios de abogado al amparo de la Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d).

Posteriormente, el 13 de diciembre de 2023, Planet Home compareció nuevamente a través de la presentación de una *Moción de Sentencia Sumaria en cuanto a la Reconvención*.[3] En su pliego, afirmó que, en el presente caso, el único asunto litigioso a resolver se limitaba a determinar si la parte apelante adeudaba o no las sumas reclamadas en la reconvención. Por otro lado, reiteró que la doctrina de retracto de crédito litigioso no aplicaba al pleito de autos toda vez que no se cumplieron los requisitos para su ejercicio. A su vez, aseguró que tenía legitimación activa para presentar la reconvención ya que era el administrador del crédito de Luna Commercial, quien era la acreedora actual del préstamo. Ante ello, solicitó que se dictara sentencia sumaria a su favor y que se condenara a la parte apelante al pago de las partidas reclamadas,

---

[3]Planet Home Lending, LLC acompañó su *Moción de Sentencia Sumaria en cuanto a la Reconvención* con la siguiente prueba documental: 1) Contrato de Prenda suscrito entre Banco Santander Puerto Rico, VRH Properties, Inc. y Law Offices of Hernández López De Victoria, PSC.; 2) Pagaré Hipotecario; 3) Declaración Jurada suscrita por el señor Rafael Hernández Miranda, representante de Planet Home; 4) Escritura Núm. Once (11) intitulada *Hipoteca en Garantía de Pagaré*; 5) Certificación de Propiedad Inmueble emitida por el Registro de la Propiedad de Puerto Rico; 6) *Garantía* suscrita por Juan José Hernández López De Victoria y Mireidi Méndez Falcón; 7) *Garantía* suscrita por Law Offices of Hernández López De Victoria, PSC.; 8) Historial de Pagos; 9) Documento intitulado *Extensión y Plan de Pagos*; 10) Documento intitulado *Enmienda al Pagaré y Contrato de Préstamo por Acuerdo de Moratoria*; 11) Correo electrónico identificado como Anejo K; 12) Correo electrónico identificado como Anejo L; 13) Correo electrónico identificado como Anejo M; 14) Correo electrónico identificado como Anejo N; 15) Correo electrónico identificado como Anejo O; 16) Correo electrónico identificado como Anejo P; 17) Correo electrónico identificado como Anejo Q; 18) Correo electrónico identificado como Anejo R; 19) Correo electrónico identificado como Anejo S.

así como a la ejecución del pagaré y la hipoteca en caso de incumplimiento.

En respuesta, el 24 de enero de 2024, la parte apelante presentó una *Oposición a Mociones de Sentencia Sumaria de las Demandadas y Moción de Sentencia Sumaria de las partes Demandantes*.[4] En síntesis, reiteró que el préstamo comercial era de tipo "balloon", con un término de cinco (5) años y una amortización proyectada a quince (15), y que Banco Santander inició formalmente el proceso de renovación previo a su vencimiento, lo cual creó expectativas legítimas y activó un deber de buena fe en la negociación. Alegó que durante varios meses intercambiaron documentación, discutieron los términos esenciales del refinanciamiento y alcanzaron acuerdos parciales, quedando pendiente únicamente el cierre de la transacción. Sostuvo que, no obstante lo anterior, las instituciones bancarias se retiraron abruptamente del proceso, primero al informar la cesión del crédito y luego, al imponer como condición una *Sentencia por Consentimiento*, lo cual impidió la culminación del refinanciamiento. A su vez, impugnó la legitimación activa del administrador del préstamo y alegó que no se demostró su capacidad representativa ni la titularidad válida de la acreencia. Asimismo, afirmó que las entidades demandadas admitieron que los créditos se encontraban en mora al momento de las transferencias, por lo que no podían ostentar la condición de tenedores de buena fe. Además, adujo que se consignó ante el Tribunal la suma total de sesenta y un mil novecientos veintinueve dólares con veintidós centavos ($61,929.22), pagos que no fueron objetados.

---

[4]Según surge del expediente del caso ante nuestra consideración, la parte apelante compareció el 24 de enero de 2024, mediante la presentación de una *Moción para Adelantar Anejos*. En esta, incluyó todos los documentos, los cuales, posteriormente, en su *Oposición a Mociones de Sentencia Sumaria de las Demandadas y Moción de Sentencia Sumaria de las Partes Demandantes,* iba a hacer referencia.

Finalmente, solicitó nuevamente que se ordenara el cumplimiento de los acuerdos parciales alcanzados, que se acreditaran las sumas consignadas al balance del préstamo y que se eliminara la exigencia de una sentencia por consentimiento. En la alternativa, pidió que se impusiera responsabilidad por el retiro injustificado de las negociaciones y que se denegaran las mociones de sentencia sumaria de las partes demandadas, con la concesión de sentencia sumaria a su favor.

Luego de ambas partes presentar oposiciones y réplicas en torno a las mociones de sentencia sumaria, el 15 de julio de 2024, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa. Como parte del dictamen, el Foro primario emitió las siguientes sesenta y nueve (69) determinaciones de hechos incontrovertidos:

1. VRH Properties, Inc. es una corporación creada y existente a tenor con las leyes de Puerto Rico. Su dirección física es Nieper 1645, El Cerezal, San Juan, Puerto Rico 00926.

2. Law Offices of Hernández López de Victoria, P.S.C., es una corporación de servicios profesionales organizada y existente conforme a las leyes del Estado Libre Asociado de Puerto Rico.

3. Juan José Hernández López de Victoria es mayor de edad, soltero, abogado y residente de San Juan, Puerto Rico.

4. Mireidi Méndez Falcón es mayor de edad, soltera, artista plástico y residente de Guaynabo, Puerto Rico.

5. El Sr. Hernández y la Sra. Méndez estuvieron casados desde el 10 de diciembre de 1994 hasta el 31 de octubre de 2019.

6. FirstBank Puerto Rico es la entidad subsistente y sucesora en interés de Banco Santander Puerto Rico por haberse fusionado con ella y es hoy una entidad bancaria autorizada para hacer negocios en Puerto Rico.

7. Planet Home Lending, LLC. es una compañía de responsabilidad limitada creada y existente a tenor con las leyes del Estado de Delaware y autorizada a hacer negocios en Puerto Rico. A la fecha de la presentación de la demanda de epígrafe, sus direcciones postales y física era 321 Research Pkwy, Ste 303, Meriden, CT 06450.

8. En el año 2012, Law Offices suscribió un segundo Contrato de Línea de Crédito Ágil con el Banco Santander de Puerto Rico para propósitos de capital de trabajo u operacional.

9. Dicho Contrato de Línea de Crédito Ágil entre Law Offices y Banco Santander de Puerto Rico sería sin fecha de vencimiento, el máximo a desembolsar sería de $90,000.00, aumentado de $75,000.00 en el contrato original entre las partes, y la tasa de interés pactada fue de 5% sobre la tasa de interés preferencial variable.

10. A diciembre de 2014, la mencionada Línea, entonces con el número de cuenta 3004450190, tenía un balance adeudado de $90,000.00.

11. El 28 de febrero de 2013, VRH Properties y Banco Santander suscribieron un Contrato de Préstamo tipo "balloon" por la cantidad de $126,000.00 que sería pagadero en plazos mensuales calculado a base de una amortización de 15 años y vencedero el 28 de febrero de 2018, fecha en que sería renovado o satisfecho el balance del "balloon" por acuerdo entre las partes. Esta transacción constituyó un negocio distinto al de Law Offices, pues la casa adquirida se dedicaba a alquiler de apartamentos residenciales y con el financiamiento obtenido de Santander se canceló un pagaré que existía a favor de Banco Popular de Puerto Rico y Hernández adquirió las participaciones de otros tres accionistas para advenir a ser el único accionista de dicha corporación. La tasa de interés pactada para ese financiamiento fue de 7.50%.

12. En el Contrato de Préstamo se acordó
ARTÍCULO IV
Sección 4.01 Eventos de Incumplimiento.
a. Incumplimiento por el Deudor en el pago del principal, o en el pago de los intereses sobre el Pagaré en este Contrato o cualesquiera otra facilidad de crédito anterior o posterior a este Contrato que el Deudor tenga con el Banco u otra

entidad bancaria, cuando dichos pagos sean pagaderos (a la fecha de vencimiento u otra);

......

j. Que el Deudor no cancele la deuda o refinancie el monto total adeudado al Banco en la Fecha de Vencimiento.

13. El mencionado préstamo comercial fue evidenciado por el contrato y el pagaré, y garantizado por una Primera Hipoteca sobre el inmueble de VRH Properties localizado en el 1645 de la Calle Nieper, Urb. El Cerezal, San Juan Puerto Rico.

14. Por exigencia del Banco Santander, dicho Préstamo fue garantizado solidariamente por la Sra. Méndez y el Sr. Hernández, quienes a su vez dieron en prenda al Banco Santander el pagaré hipotecario antes mencionado.

15. En consideración a todos y cualesquiera préstamos concedidos en el pasado, o que se concedan o continúen concediéndose y los concedidos en el futuro por el acreedor, los Deudores suscribieron un documento intitulado "Contrato de Prenda" el 28 de febrero de 2013, reconocido mediante el afidávit número 18,125 ante el Notario Público Félix R. Santiago Rodríguez, donde las partes pactaron:

a. Los Deudores se comprometieron a entregar al BANCO garantías colaterales adicionales aceptables o a hacer pagos adicionales si el precio o valor en el mercado de los bienes dados en prenda sufriere baja o depreciación.

b. El Acreedor y los Deudores acordaron que en caso de incumplimiento de lo convenido lo anterior, el acreedor podrá, a su opción, vender total o parcialmente, en pública subasta, los bienes, así como, también cualesquiera bienes o valores dados o dejados en posesión del acreedor.

c. El Acreedor y los Deudores acordaron que el acreedor "podrá traspasar el pagaré o pagarés que representan las obligaciones del CLIENTE para con dicho BANCO y podrá, además, entregar dicha garantía colateral en todo o en parte al cesionario(s), quienes quedaran investidos de todos los poderes y derechos arriba conferidos al BANCO sobre tal garantía, quedando el BANCO desde entonces libre de toda responsabilidad de cualquier clase en el asunto".

16.   Surge del Documento de Prenda #1 que VRH cedió, traspasó y pignoró a favor del acreedor la siguiente garantía:

Pagaré Hipotecario con vencimiento a la presentación a favor de Banco Santander por la suma principal de $126,000.00 con vencimiento a la presentación, hasta su total pago y solvento ("Pagaré Hipotecario #1"). Surge del Pagaré Hipotecario #1 la obligación del pago de $12,600.00 por concepto de costas, gastos y honorarios de abogado. El Pagaré Hipotecario #1 reconocido mediante el affidávit 18,132, del 28 de febrero de 2013 ante la Notario Público Félix R. Santiago Rodríguez.

17.   El Pagaré Hipotecario #1 está garantizado con la hipoteca constituida mediante la Escritura Número 11 del 28 de febrero de 2013 ante el Notario Público Félix R. Santiago Rodríguez ("Escritura Núm. 11"). La Escritura Núm. 11 antes descrita grava la finca que se describe como sigue:

---URBANA: Solar marcado con el número (#11) del Bloque "N" del plano de inscripción de la Urbanización El Cerezal, Segunda Extensión, situado en el Barrio Monacillos Este y el Cinco de la Municipalidad de Río Piedras antes, hoy San Juan, Puerto Rico, con una cabida superficial de CUATROCIENTOS VEINTIDOS PUNTO CUARENTA Y NUEVE (422.49) METROS CUADRADOS. En lindes por el NORTE, en veintiocho punto cuarenta y siete (28.47) metros, con el solar N-12; por el SUR, en veintisiete punto noventa y cuatro (27.94) metros, con el solar N-10; por el ESTE, en doce punto ochenta (12.80) metros, con el solar N-5; y por el OESTE, en diecisiete punto cero cero (17.00) metros, con la Calle Nieper".

--Enclava casa de concreto reforzado y bloques de concreto para fines residenciales.

---Inscrita al Folio 199, Tomo 293 de Monacillos Este y el Cinco, Sección Quinta, Registro de la Propiedad de San Juan, Finca #3966.

18.   Las partes acordaron en la Escritura Núm. 11 para cumplir con lo dispuesto en el Art. 179 de la Ley Hipotecaria de Puerto Rico, (30 LPRA sec. 2575), que la Propiedad fue tasada en $126,000.00. Se establece además que:

---k) Se estipula y conviene que en el caso de que el (los) pagarés hipotecario(s) en garantía del (de los) cual(es) se constituye la hipoteca objeto de este título fuere(n) entregado(s) en prenda para garantizar cualquier deuda u obligación de su(s) otorgante(s) o de cualquiera de ellos, o del dueño o tenedor de dicho(s) pagaré(s) hipotecario(s), el acreedor prendario, como tenedor del (de los) mismo(s), conjuntamente con su acción para el cobro o para exigir el cumplimiento de la deuda o de la obligación garantizada con la referida prenda, podrá, a su opción, proceder también al cobro del (de los) mencionado(s) pagare(s) hipotecario(s) y a la ejecución de la hipoteca que se constituye por esta escritura, para con el producto de dicha ejecución hacer efectivo el importe de su acreencia o el de la obligación objeto de su reclamación garantizada con dicho(s) pagaré(s) hipotecario(s) dado(s) en prenda."

19. La Escritura Núm.11 consta debidamente inscrita en el Registro de la Propiedad.

20. Ese mismo día, 28 de febrero de 2013, como garantía adicional para el fiel y oportuno pago de las obligaciones de VRH, el Sr. Hernández, la Sra. Méndez y la CB suscribieron un documento intitulado Garantía, reconocido mediante el afidávit 18,128 ante el Notario Félix R. Santiago Rodríguez.

21. Igualmente, como garantía adicional para el fiel y oportuno pago de las obligaciones de VRH, la codemandada Law Office HLDV suscribió un documento intitulado Garantía, reconocido mediante el afidávit 18,129 ante el Notario Félix R. Santiago Rodríguez.

22. Conforme surge, la parte demandante tomó dos facilidades de financiamiento (préstamos) a Banco Santander Puerto Rico25 (véase demanda).

23. Los Deudores comenzaron a tener dificultades con el cumplimiento de sus obligaciones en el 2015, es decir seis (6) años antes de la presentación de la Demanda. Los acreedores le concedieron varios acomodos a los Deudores.

24. Uno de los acomodos lo concedió Banco Santander, el 17 de marzo de 2015, Law Office HLDV, VRH, y Hernández suscribieron un documento intitulado "Extensión y Plan de Pago"

reconocido mediante el afidávit 23 ante el Notario Público Juan Carlos Serrano Santiago. Mediante la Extensión, los Deudores reconocieron y aceptaron que adeudaban: (a) la suma total de $90,000.00 de principal por concepto de la línea de crédito comercial #3004450190 y (b) la suma total de $118,119.39 de principal por concepto del préstamo comercial #7006674490 desembolsado el 28 de febrero de 2013 por la cantidad de $126,000.00. Allí, acordaron refinanciar y consolidar ambas deudas mediante un préstamo comercial por la suma de $208,119.39 con el número 7006713968.

25. El Crédito Consolidado se hizo a nombre de VRH Properties, garantizado por Law Offices, el Sr. Hernández y la Sra. Méndez.

26. Surge de la Extensión, que los Deudores tendría 5 (cinco) meses de moratoria y posteriormente efectuaría 54 (cincuenta y cuatro) pagos mensuales y consecutivos de $1,692.07 de principal e intereses vencidos y un pago final por el balance insoluto de principal más intereses y mora vencidos. Disponiéndose que la obligación devengaría intereses a razón de 7.50% de interés y se estableció el 28 de febrero de 2020 como la fecha de vencimiento del pago final del balance insoluto.

27. En el párrafo Cuarto de la Extensión las Partes acordaron que: "[e]l incumplimiento de cualquiera de los pagos acordados para aplicar a principal más intereses de las sumas reconocidas anteriormente que no sea cubierta en su fecha de vencimiento, dará lugar al vencimiento total de todo el balance insoluto de principal, intereses y cargos por demora, si alguno, y la suma adicional equivalente al 10% del importe de la deuda total por concepto de honorarios de abogado. El Banco podrá, de inmediato, proceder al cobro de la totalidad de lo adeudado."

28. Durante el año 2017, por razón del paso del huracán María, la parte demandante se acogió al programa de moratoria de pagos.

29. El 22 de diciembre de 2017, con motivo del paso del Huracán María por Puerto Rico, el Sr. Hernández, VRH y Law Offices HLDV suscribieron un documento intitulado "Enmienda al Pagaré y Contrato de Préstamo por Acuerdo de Moratoria" ante el Notario Público Luis Arnaldo

Dueño Vargas mediante el affidávit para una moratoria ofrecida por Banco Santander al pago del préstamo comercial consolidado.

30. Mediante la enmienda al Pagaré se le concedió a los Deudores una moratoria del principal e intereses por el periodo fijo de tres (3) meses, comenzando el día 17 de septiembre de 2017 y terminando el 17 de noviembre de 2017.

31. El 21 de octubre de 2019, Banco Santander anunció un acuerdo para vender a FirstBank 27 sucursales y ciertos activos en Puerto Rico que totalizaron aproximadamente $6,200 millones de dólares, anunciaron entonces que la transacción cerraría a mediados del año 2020.

32. El 31 de diciembre de 2019, Banco Santander vendió el crédito consolidado a Santander Financial Services.

33. Dicho Pagaré fue cedido y debidamente endosado a favor de Santander Financial Services Inc, el 31 de diciembre de 2019.

34. El 6 de febrero de 2020, la Sra. Glori Rosado Loperena alertó al Sr. Hernández que el préstamo vencía el 17 de marzo de 2020 y que para que se renovara el préstamo era necesario la data financiera y llenar someter una solicitud para comenzar el proceso.

35. El 20 de febrero de 2020, la Sra. Rosado, de Banco Santander, le envió a VRH Properties la solicitud de préstamo comercial que debía cumplimentar y le comunicó que en adición necesitaría los estados financieros de 2 años y un estado de situación personal.

36. El 2 de marzo de 2020, la Sra. Rosado pasó la solicitud de documentos de VRH Properties a la Sra. Jelissa Santana Hidalgo, Gestora Comercial/Agente de Seguros, Sucursal Calle Loíza del Banco Santander, quien le envió a VRH Properties un detalle más claro de los documentos necesarios para tramitar la solicitud de renovación de los créditos con el Banco Santander. Solicitud de préstamo comercial completada y firmada, estados financieros de los últimos dos años y el estado de situación.

37. El 4 de marzo de 2020, VRH Properties envió la solicitud a la Sra. Jelissa Santana Hidalgo de

Banco Santander y al día siguiente, 5 de marzo de 2020, esta respondió solicitando aclaración de quienes serían los deudores principales y que quedan pendientes los estados financieros de ambas corporaciones.

38. El 5 de marzo de 2020, el Sr. Hernández comunicó que el préstamo era a nombre de VRH, garantizada por Law Offices y por él. Asimismo, que tan pronto lograra preparar los estados de las corporaciones, les avisaba.

39. En respuesta, el 5 de marzo de 2020, la Sra. Jelissa Santana, de Banco Santander, comunicó que la solicitud debía ser corregida. Debe ir a nombre de la corporación.

40. El 13 de marzo de 2020, a petición de Banco Santander, VRH Properties hizo el pago correspondiente y así se le notificó a la Sra. Santana de Banco Santander, quien respondió que se reflejaría al día siguiente.

41. El 15 de marzo de 2020 se decretó un toque de queda con motivo de una emergencia de salud en Puerto Rico por el COVID 19.

42. El 20 de abril de 2020, VRH Properties le escribió a la Sra. Santana de Banco Santander con respecto a las moratorias publicadas por el Banco Santander y el proceso para obtenerlas con respecto a las obligaciones comerciales.

43. El 12 de mayo de 2020 la Sra. Rosado de Banco Santander le hizo llegar a VRH Properties los documentos de la moratoria por COVID.

44. El 18 de mayo de 2020, la Sra. Jelissa Santana de Banco Santander, comunico que:
EI préstamo se está extendiendo 3 meses debido a la moratoria, el mismo vencía ahora en mayo pero al acogerse a la moratoria la fecha de vencimiento se mueve. La moratoria aplica desde la última facturación que fue en marzo y vence ahora en mayo. Para la renovación, recuerde que le solicitamos información financiera 2019 de ambas corporaciones y la corrección de la solicitud, hasta el momento solo hemos recibido estado de situación personal.

45. El 20 de mayo de 2020 la Sra. Jelissa Santana de Banco Santander detalló a VRH Properties el curso de acción y comunicó que:

Según conversamos, para los meses de junio y julio usted realizará los pagos regulares de $1,692.07 cada mes, esto cubrirá los intereses acumulados de dos meses de moratoria. Antes de renovar el préstamo (en agosto 17.2020) se debe cubrir el restante que tenga acumulado en intereses. La cantidad de la principal acumulada de los tres meses de moratoria será añadida al balance del "balloon" a ser renovado. La realidad es que [no] podemos darle un número exacto porque dependerá de cómo se realicen los pagos ya que los intereses se acumulan diario, pero para que tenga un ejemplo, la factura de abril 2020 refleja una cantidad en intereses de $1,227.59 correspondiente a ese mes.

46. El 22 de mayo de 2020, todos los demandantes menos la compareciente Méndez y el Banco Santander suscribieron una Enmienda al Pagaré y Contrato de Préstamo Comercial Sin Modificación Hipotecaria y/o De Colateral Por Acuerdo de Moratoria COVID 19 en la cual se acordó que la fecha de vencimiento de los créditos concedidos sería el 17 de agosto de 2020.

47. Según los documentos provistos por FirstBank durante el descubrimiento de prueba, dicha moratoria fue recomendada y aprobada por el Banco Santander de PR.

48. El 9 de junio de 2020, Jelissa Santana le cursó un comunicado a Hernández donde le hace referencia a otro del 2 de marzo de 2020 donde le solicitaba los documentos necesarios para evaluar la renovación del préstamo que vencía el 17 de marzo de 2020. Se le comunicó que, para poder trabajar la renovación del préstamo, urgía recibir la información en relación con; 1) Solicitud corregida a nombre de la corporación; 2) Estados financieros 2019 de las corporaciones Law Offices HLDV y VRH; y, 3) Agins de cuentas por cobrar y cuentas por pagar.

49. El 1 de julio de 2020, una solicitud de préstamo incompleta fue recibida por Santander.

50. El 15 de julio de 2020 remitió el Estado Financiero de Law Office of Hernández López de Victoria. El 16 de julio de 2020, la Sra. Jelissa Santana Hidalgo confirmó el recibo del correo electrónico y comunicó que estaba enviando toda la información al oficial de crédito para la evaluación.

51. El 5 de agosto de 2020 se le hizo llegar a VRH Properties el Historial de Pagos del Crédito Consolidado, según Banco Santander.

52. La segunda moratoria por COVID venció el 17 de agosto de 2020.

53. El 19 de agosto de 2020, Jelissa Santana, de Banco Santander le comunicó al Sr. Hernández que el préstamo objeto de esta demanda había sido vendido a Santander Financial a principios de año, por lo que la renovación del préstamo, del préstamo la estaría trabajando el Sr. José Román de Santander Financial.

54. El 1 de septiembre de 2020, FirstBank Puerto Rico adquirió los derechos y obligaciones de Banco Santander de Puerto Rico, como resultado de una fusión.

55. El 29 de septiembre de 2020, el Sr. Román le reiteró a Hernández que toda negociación debía canalizarse a través de él como representante de Santander Financial, incluso le indicó la dirección a donde debía remitir los pagos. En una comunicación posterior, el Sr. Hernández reconoció que no había completado negociación alguna con Jelissa Santana, Oficial de Santander, específicamente, acotó "quedo pendiente la renovación de los términos del préstamo que casi culminé con Santana".

56. El 5 de octubre de 2020, Román le indicó a Hernández los que estaba dispuesto a recomendarle para aprobación a Santander Financial los siguientes términos:
• Pago mensual de $1,762.05 por 35 meses (Ya estarían completado los 35 pagos) y un pago final del balance
• Tasa de Interés 7.50% HLdV87-89
• Aportación aproximada de $2,000.00 de gastos legales por concepto de extensión del préstamo
• Aportación adicional de $3,553.34 para cubrir las facturas de Junio y Julio.

57. El 9 de octubre de 2020, el Sr. Hernández, por su parte respondió que solamente estaría dispuesto a aceptar 6.25% a lo que Román ripostó que por Santander Financial no ser un Banco no tenían un margen muy pequeño para ajustes, su función era más bien cobrar y no generar préstamos nuevos. No obstante, Román le indicó que podía

llegar a 6.75% que es el interés que había negociado con la Sra. Jelissa Santana de Banco Santander antes de la cesión del préstamo. Hernández hizo referencia a que el préstamo estaba a 3.00% sobre el prime rate, es decir una tasa variable y le ofrecían una fija. El prime rate hoy está en 8.50% por lo que el interés sería 11.50%, por tanto, la oferta que le hicieron era casi la mitad de lo que estaría hoy.

58. El 21 de abril de 2021, el Sr. Román remite el acuerdo de pago propuesto, VRH por vía del Sr. Hernández, entre lo cual había un documento de sentencia por consentimiento.

59. El 26 de abril de 2021, VRH por vía del Sr. Hernández, respondió que no le parecía razonable que Santander Financial pretendiera suscribir un documento de sentencia por consentimiento. A su vez, comunicó que le parecía apropiado que se suscribiera una extensión del préstamo al 6.75 de interés desde el vencimiento del préstamo en adelante previendo que al final de los tres años provistos para el repago, sino se ha satisfecho, las partes puedan llevar a cabo un refinanciamiento. A su vez, se puso a disposición para llevar a cabo el cierre del refinanciamiento el 30 de abril de 2021.

60. El 19 de mayo de 2021 Santander Financial Services, Inc. y Planet Home le remitieron a los Deudores un comunicado donde se le informó que su préstamo comercial había sido transferido a Planet quien a partir de esa fecha había adquirido la posición de administrador y cobraría las mensualidades de su préstamo comercial.

61. Santander Financial endosó el Pagaré Hipotecario a favor de Luna Commercial II, LLC.

62. Luna Commercial delegó la administración del préstamo a Planet Home.

63. El 24 de mayo de 2021, el Sr. Román, le remitió un segundo comunicado a los Deudores donde le comunica su información de contacto y la dirección a donde enviar los pagos.

64. Ese mismo día, en otro comunicado, el Sr. Román le informó a VRH que iba a confirmar si el nuevo dueño del préstamo aceptaría suscribir un acuerdo de pago privado o continuaría con la política que mantenía Santander Financial de

negocias todos los planes de pago bajo "sentencia por consentimiento". Igualmente, Román indicó que entendía que el resto de los términos y condiciones (excluyendo el aspecto de la sentencia) serian aceptados por la nueva entidad.

65. El 14 de junio de 2021, VRH y el Sr. Hernández le notificó a Román la versión del acuerdo que busca imponer.

66. En dicho correo electrónico, comunicó que recibió una notificación de Planet indicándole que para poner al día el préstamo, requiere un pago de $18,866.57. Manifestó que Planet Home solo aceptaría en lo sucesivo una versión del acuerdo de plan de pagos que remitió Santander Financial. Adjuntó la versión del acuerdo que estaríamos dispuestos a firmar. Si fuese aceptable para Planet y lo suscribimos en o antes de esa fecha, haríamos el pago mencionado en los documentos que recibimos al momento del cierre. Nos hacemos disponibles para ello el jueves, 17 de junio, a la hora que logremos coordinar.

67. El 21 de junio de 2021, el Sr. Román le informó a VRH que el nuevo acreedor se sostenía en la versión del acuerdo que le fuera notificada en el origen (el cual contemplaba que se dictara sentencia por consentimiento). Román también alertó a los Deudores que el Acuerdo debía suscribirse en o antes del 30 de junio de 2021 ya que el préstamo estaba vencido desde 2020. El mismo 30 de junio de 2021 los Demandantes presentaron la Demanda de epígrafe.

68. El balance al 2 de octubre de 2023 es $192,301.58 por concepto de principal, más $48,232.41 por concepto de intereses vencidos, así como los que se continúen acumulando hasta su total pago o solvento, $253.80 de cargos por retraso, así como aquellos, que se continúen acumulando, adelantos, más el 10.00% del principal por concepto de costas, gastos y honorarios de abogado como partida líquida según estipulado por las partes.

69. Las sumas antes desglosadas fueron declaradas vencidas, líquidas, exigibles y no han sido satisfechas.

Conforme concluyó, la prueba documental sometida a su escrutinio estableció que las partes no perfeccionaron acuerdo

alguno para la renovación del *Crédito Consolidado* antes de su vencimiento, y que la obligación advino exigible, sin que la parte apelante cancelara el balance adeudado ni refinanciara el monto total. A partir de ello, el Tribunal de Primera Instancia determinó que no se configuró actuación contraria a la buena fe contractual durante el proceso de negociación, que Planet Lending ostentaba legitimación para reclamar la acreencia y que la figura del retracto de crédito litigioso no resultaba aplicable al tratarse de un instrumento negociable regulado por la *Ley de Transacciones Comerciales*, Ley Núm. 208-1995, según enmendada, 19 LPRA sec. 401 *et seq.* En consecuencia, desestimó la *Demanda* de epígrafe, acogió las mociones de sentencia sumaria presentadas por la parte apelada y declaró *Ha Lugar* la Reconvención presentada por Planet Home, al concluir que la deuda reclamada era líquida, vencida y exigible, y que procedía la ejecución del pagaré hipotecario en caso de incumplimiento.

Inconforme con la determinación emitida por el foro primario, el 9 de septiembre de 2024, la parte apelante compareció ante nos mediante la presentación del presente recurso de *apelación.* En su escrito señala la comisión de los siguientes errores:

> Erró el TPI al no consignar los hechos controvertidos y los incontrovertidos de aquellos planteados por los comparecientes como parte de su denegatoria de nuestra Moción de Sentencia Sumaria.
>
> Erró el TPI al descartar y no hacer determinaciones adicionales de hecho relativas a la relación entre el demandado Planet Home Lending y su alegado contrato de servicio con el acreedor Luna Commercial II que no fue parte en este pleito excepto en una comparecencia especial.
>
> Erró e TPI al no determinar que Banco Santander violó su deber contractual de buena fe en su vertiente de "good faith and fair dealing" al sorpresivamente anunciar que 6 meses antes había transferido los créditos a su entidad relacionada, Santander Financial, entidad que exigiría requisitos nunca antes exigidos por Banco Santander en la negociación.

Erró el TPI al determinar que Planet Home Lending es un tenedor de buena fe a pesar de que adquirió el instrumento negociable a sabiendas de que estaba vencido, comprándolo a descuento significativo y con todo el conocimiento que tenían los acreedores previos, Banco Santander y Santander Financial, por estar representados por la misma persona que representó a los acreedores anteriores.

Erró el TPI al ni siquiera considerar el efecto de que con la presentación de la Demanda se consignó en el tribunal la suma de $20,558.64 y, de ahí en adelante, en 17 ocasiones los demandantes presentaron consignaciones de dinero mensuales que fueron aprobadas por el TPI sin oposición alguna de los demandados hasta el monto de $61,929.22. Véase: SUMAC 32, 40, 49, 53, 58, 102, 109, 112, 119, 126, 131 y 136.

El 3 de octubre de 2024, Planet Home compareció mediante *Moción en Solicitud de Paralización Conforme 11 U.S. Code § 362*, en la cual informó que la señora Méndez Falcón había presentado una petición de quiebra. En atención a ello, el 4 de octubre de 2024 declaramos *Ha Lugar* la referida solicitud y ordenamos el archivo administrativo del recurso.

Posteriormente, el 15 de octubre de 2025, compareció el señor Hernández López De Victoria mediante *Moción Informativa y Solicitud de Reactivación del Caso*, en la cual comunicó que, el 8 de octubre de 2025, fue desestimada la petición de quiebra presentada por la señora Méndez Falcón y solicitó la reactivación del presente recurso.

Así, luego de examinar el expediente de autos y con el beneficio de la comparecencia de las partes de epígrafe, estamos en posición de disponer del presente asunto.

**II**

**A**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Este mecanismo procesal es un

remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa de que trate. *Batista Valentín v. Sucn. Batista Valentín,* 2025 TSPR 93, 216 DPR ___ (2025); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Negrón Castro et al. v. SLG et al.*, 2025 TSPR 96, 216 DPR ___ (2025); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión*, 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333*.* Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432 (2013).

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos,

la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000). Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Además, en innumerables ocasiones nuestro Tribunal Supremo ha expresado que no procede una sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de la credibilidad es esencial. *Carpets & Rugs v. Tropical Reps,* 175 DPR 615, 638 (200), *Piñero v. A.A.A.,* 146 DPR 890, 904 (1998); *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301-302 (1994). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar

específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> **Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

> **Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> **Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

## B

El retracto de crédito litigioso es la figura jurídica que permite a un deudor extinguir una obligación pagando el precio que el cesionario de su crédito pagó por este. *DLJ Mortgage v. SLG*

*Santiago-Ortiz,* 202 DPR 950, 958-959 (2019). En cuanto a la referida figura jurídica, el Artículo 1220 del Código Civil de 2020, dispone lo siguiente:

> Si se cede un crédito litigioso, el deudor tiene derecho a extinguirlo mediante el reembolso al cesionario de lo que este haya pagado, de las costas ocasionadas y de los intereses del pago desde el día cuando se hizo.
>
> Se tiene por litigioso un crédito desde el momento cuando se contesta la demanda.
>
> El deudor puede invocar su derecho dentro del término de caducidad de treinta (30) días, contados desde que el cesionario le reclama el pago.
>
> 31 LPRA sec. 9581.

A su vez, y en armonía con lo anterior, el Artículo 1212 del Código Civil de 2020, delimita expresamente el alcance del retracto del crédito litigioso, al establecer que:

> En el caso de la cesión de un derecho litigioso, la acción que ejercita el cesionario es sin perjuicio de cualquier reclamación en contrario o de otro derecho existente al tiempo de notificarse la cesión, o antes; **pero esto no es aplicable a la cesión de un instrumento negociable, traspasado de buena fe y por valor, antes de su vencimiento**.
>
> 31 LPRA sec. 9573. Énfasis nuestro.

En lo pertinente al caso que nos ocupa, es menester señalar que nuestro Tribunal Supremo ha tenido la oportunidad de resolver si procede el ejercicio de la figura del retracto de crédito litigioso sobre la cesión de un pagaré hipotecario. En cuanto a ello, en *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, nuestro Tribunal Supremo determinó que la Ley de Transacciones Comerciales, Ley Núm. 208-1995, según enmendada, 19 LPRA sec. 401 *et seq,* desplazó las disposiciones del Código Civil referentes a la figura del crédito litigioso, haciéndolas inaplicables a las transferencias de instrumentos negociables otorgadas a su amparo. Por tanto, la figura del retracto de crédito litigioso no aplica en los casos de cesión o venta de un pagaré hipotecario. *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, pág. 968.

Por otro lado, y pertinente a la controversia de autos, conviene señalar que la Sección 2-203(b) de la Ley de Transacciones Comerciales dispone que la cesión de un instrumento, sea esta una negociación o no, confiere al cesionario los derechos del cedente para exigir su cumplimiento, incluyendo aquellos que este ostentara como tenedor de buena fe, excepto en los casos en que el cesionario haya participado en fraude o ilegalidad que afectara el instrumento. 19 LPRA sec. 553.

## C

Finalmente, la consignación es una de las formas de pago reconocida en nuestro ordenamiento jurídico. Esta se define como el depósito judicial de la cosa debida. *TOLIC v. Rodríguez Febles*, 170 DPR 804, 818-819 (2007). Citando a J. Vélez Torres, *Derecho de Obligaciones*, 2da ed. rev. San Juan, Programa de Educación Continua, Universidad Interamericana, 1997, pág. 186. Particularmente, el Artículo 1131 del Código Civil de Puerto Rico de 2020, 31 LPRA 9181, dispone que:

> El deudor queda liberado de responsabilidad mediante la consignación o la oferta de la prestación debida en cualquiera de estos casos:
>
> (a) si el acreedor a quien se hace el ofrecimiento de pago se niega, sin razón, a admitirlo;
>
> (b) si el acreedor está ausente o incapacitado para recibir el pago;
>
> (c) si varias personas pretenden tener derecho a cobrar; o
>
> (d) si se ha extraviado el título de la obligación.

Cuando lo que se consigna es dinero, se deposita en la cuenta del tribunal, ante quien se deberá acreditar el depósito. 31 LPRA sec. 9183. Ahora bien, una vez realizada la consignación, para que se libere al deudor deben concurrir los siguientes requisitos: (a) debe ser previamente anunciada a las personas interesadas en el cumplimiento de la obligación; (b) debe ajustarse estrictamente a los

requisitos del pago; y (c) debe hacerse mediante el depósito de lo debido. 31 LPRA 9182.

La figura de la consignación judicial procura brindar a un deudor un mecanismo mediante el cual pueda liberarse de su obligación. *ASR v. Proc. Rel. Familia,* 196 DPR 944, 950 (2016). De esta manera, la consignación supone una forma de pago que le permite al deudor solicitar a un tribunal que ordene la cancelación de la obligación. *Íd.* Sin embargo, la liberación formal del deudor depende de que el tribunal determine que la consignación está bien hecha. *TOLIC v. Rodríguez Febles,* supra. Mientras el acreedor no haya aceptado la consignación o no haya recaído una declaración judicial de que está bien hecha, la obligación podrá subsistir si el deudor retira la cuantía consignada. *ASR v. Proc. Rel. Familia,* supra. La determinación judicial lo que hace "es declarar que la consignación está bien hecha, reconociéndole los efectos liberatorios que perseguía el deudor desde que depósito la cosa, por lo tanto, debe surtir efecto desde ese momento". *TOLIC v. Rodríguez Febles,* supra.

En fin, la consignación libera al deudor en dos instancias: (1) mediante la aceptación de la cuantía consignada por parte del acreedor, o (2) por vía de una declaración judicial a los efectos de que la consignación se realizó conforme a derecho. *ASR v. Proc. Rel. Familia,* supra.

### III

En su recurso, la parte apelante sostiene que el Tribunal de Primera Instancia erró al adjudicar sumariamente el pleito sin consignar adecuadamente los hechos controvertidos y no controvertidos, al descartar realizar determinaciones adicionales de hecho respecto a la relación contractual entre Planet Home y el acreedor Luna Commercial, y al concluir que Banco Santander no violentó su deber de buena fe contractual, durante el proceso de

negociación sobre una posible renovación del *Crédito Consolidado*. Además, aduce que el Foro primario erró al determinar que Planet Home ostenta la condición de tenedor de buena fe del instrumento negociable, a pesar de que este fue adquirido con conocimiento de su vencimiento y tras una transferencia entre entidades relacionadas. Finalmente, plantea que el Tribunal de Primera Instancia omitió considerar el efecto jurídico de las consignaciones efectuadas por la parte apelante, las cuales totalizaron $61,929.22.

En principio, conforme esbozáramos, el estado de derecho reconoce que, al examinar un dictamen emitido por el Foro primario en cuanto a una solicitud de sentencia sumaria, el Tribunal de Apelaciones se encuentra en igual condición que el Tribunal de Primera Instancia para entender sobre sus méritos. A tales fines, el ejercicio de nuestras facultades constituye una revisión *de novo*, que nos sujeta a los términos y exigencias de la Regla 36 de Procedimiento Civil, *supra*, y nos permite considerar la evidencia documental que acompaña la moción dispositiva pertinente, así como el escrito presentado en oposición. Por estar en la misma posición que el foro primario, nos corresponde determinar si la *Moción de Sentencia Sumaria* presentada por FirstBank; la *Moción de Sentencia Sumaria* por Santander Financial y Planet Home; la *Moción de Sentencia Sumaria en cuanto a la Reconvención* presentada por Planet Home; y la *Oposición a Mociones de Sentencia Sumaria de las Demandadas y Moción de Sentencia Sumaria de las Partes Demandantes* presentada por la parte apelante cumplen con los requisitos establecidos en la Regla 36 de Procedimiento Civil, *supra*.

Al examinar las antedichas mociones de sentencia sumaria presentadas por la parte apelada, surge que esta desglosa en párrafos separados los hechos que estima incontrovertidos y relaciona, mediante referencias específicas, la prueba documental

que sostiene su postura. De igual modo, al evaluar la *Oposición a Mociones de Sentencia Sumaria de las Demandadas y Moción de Sentencia Sumaria de las Partes Demandantes* presentada por la parte apelante, se desprende que este identifica los hechos que entiende controvertidos y señala la evidencia que, a su juicio, los sustenta. Así las cosas, concluimos que los escritos cumplen con las exigencias formales dispuestas en la Regla 36 de Procedimiento Civil, *supra*, por lo que procede atender los méritos de los señalamientos de error formulados.

Por estar íntimamente relacionados, discutiremos en conjunto los primeros dos señalamientos de error. Mediante estos, la parte apelante plantea que el Tribunal de Primera Instancia erró al no consignar hechos controvertidos e incontrovertidos al resolver las mociones de sentencia sumaria, así como al no realizar determinaciones adicionales de hecho en torno a la relación entre Planet Home Lending y Luna Commercial II.

Según previamente esbozado, la Regla 36 de Procedimiento Civil, *supra*, autoriza la adjudicación sumaria únicamente cuando no existe controversia genuina sobre hechos materiales y esenciales. Un hecho material es aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable. De existir controversias reales sobre dichos hechos, el Tribunal carece de facultad para disponer del caso sin celebrar vista en su fondo. Por consiguiente, el mero hecho de que el foro primario haya dictado sentencia sumaria presupone, necesariamente, que concluyó que no mediaban controversias genuinas de hechos materiales que impidieran la adjudicación del litigio por la vía sumaria.

En el caso ante nuestra consideración, advertimos que el Tribunal de Primera Instancia dispuso del pleito en su totalidad al declarar *Ha Lugar* las mociones de sentencia sumaria presentadas por la parte apelada, lo que tuvo como resultado la desestimación

de la *Demanda* de epígrafe. Conforme al marco normativo que gobierna la adjudicación sumaria, al así disponer del litigio, el Foro primario concluyó que no existían controversias genuinas sobre hechos materiales, por lo que no venía obligado a consignar hechos controvertidos, sino a identificar aquellos hechos esenciales que estimó acreditados a la luz de la prueba documental sometida. Por ello, el planteamiento de la parte apelante en cuanto a que el Tribunal de Primera Instancia erró al no consignar hechos controvertidos carece de mérito, por lo que el primer señalamiento de error no se cometió.

Por otra parte, contrario a lo que arguye la parte apelante, del dictamen recurrido surge con claridad que el Juzgador identificó y evaluó la relación entre Planet Home y Luna Commercial a la luz de la prueba documental sometida a su consideración. En particular, estableció como hechos incontrovertidos, entre otros, que:

> (60) El 19 de mayo de 2021 Santander Financial Services, Inc. y Planet Home le remitieron a los Deudores un comunicado donde se le informó que su préstamo comercial había sido transferido a Planet quien a partir de esa fecha había adquirido la posición de administrador y cobraría las mensualidades de su préstamo comercial.
> (61) Santander Financial endosó el Pagaré Hipotecario a favor de Luna Commercial II, LLC.
> (62) Luna Commercial delegó la administración del préstamo a Planet Home.
> (63) El 24 de mayo de 2021, el Sr. Román, le remitió un segundo comunicado a los Deudores donde le comunica su información de contacto y la dirección a donde enviar los pagos.
> (64) Ese mismo día, en otro comunicado, el Sr. Román le informó a VRH que iba a confirmar si el nuevo dueño del préstamo aceptaría suscribir un acuerdo de pago privado o continuaría con la política que mantenía Santander Financial de negociar todos los planes de pago bajo "sentencia por consentimiento". Igualmente, Román indicó que entendía que el resto de los términos y condiciones (excluyendo el aspecto de la sentencia) serian aceptados por la nueva entidad.

A su vez, surge del dictamen recurrido que, el Foro primario consideró una declaración jurada suscrita por el señor Rafael Hernández Miranda, como representante autorizado, en la que

afirmó que Luna Commercial contrató a Planet Home para administrar una cartera de préstamos, entre los cuales se encuentra el *Crédito Consolidado* objeto del presente litigio. Tales hechos evidencian que el Tribunal de Primera Instancia evaluó la relación existente entre Luna Commercial y Planet Home. En particular, dejó establecido, que Luna Commercial figuraba como tenedor del pagaré y que Planet Home actuaba como administrador del préstamo por delegación del acreedor. Por tanto, el planteamiento de la parte apelante en cuanto a que el Foro de instancia omitió realizar determinaciones adicionales sobre dicha relación carece de mérito.

En su tercer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al no determinar que Banco Santander incumplió su deber contractual de buena fe, en su vertiente de "good faith and fair dealing", al informar que el crédito había sido transferido a Santander Financial, entidad que exigiría condiciones distintas a las discutidas previamente durante el proceso de negociación. No le asiste la razón. Veamos.

En el caso ante nuestra consideración, la prueba documental sometida establece que, durante el año 2020, Banco Santander de Puerto Rico sostuvo comunicaciones con la parte apelante dirigidas a evaluar la posible renovación del préstamo comercial. Consta, además, que la segunda Enmienda por Moratoria venció el 17 de agosto de 2020, sin que el *Crédito Consolidado* hubiese sido satisfecho ni refinanciado. Dos días más tarde, el 19 de agosto de 2020, Banco Santander notificó a la parte apelante que el préstamo había sido transferido a Santander Financial y que, cualquier gestión ulterior relacionada con su renovación, sería atendida por el representante autorizado de dicha entidad, quien ostentaba entonces la titularidad del Pagaré. Posteriormente, bajo la administración de Santander Financial, continuaron las comunicaciones y se discutieron términos económicos específicos,

incluyendo una tasa de interés de siete punto cinco por ciento (7.5%) y la posibilidad de reducirla a seis punto setenta y cinco por ciento (6.75%).

De igual forma, quedó acreditado que la razón por la cual no se formalizó acuerdo alguno obedeció a la negativa de la parte apelante a suscribir un documento de *Sentencia por Consentimiento* como condición para refinanciar una obligación ya vencida. Por lo tanto, de la prueba presentada no surge actuación contraria al deber de buena fe por parte de las entidades bancarias, sino la continuación del proceso de negociación bajo la titularidad del nuevo acreedor y el ejercicio del derecho de este a fijar los términos del acomodo crediticio. Consecuentemente, el tercer señalamiento de error carece de mérito, pues la evidencia considerada demuestra que las gestiones para la renovación del *Crédito Consolidado* prosiguieron tras la cesión del crédito y que la ausencia de un acuerdo respondió a la falta de aceptación por la parte apelante de los términos propuestos.

En su cuarto señalamiento, la parte apelante sostiene que erró el Tribunal de Primera Instancia al determinar que Planet Home ostentaba la condición de tenedor de buena fe, aun cuando, según alega, adquirió el instrumento negociable con conocimiento de su vencimiento, a un descuento significativo y con pleno conocimiento de las actuaciones de los acreedores anteriores. Plantea, por igual, que es de aplicación la figura del retracto del crédito litigioso.

Según previamente esbozado, el retracto de crédito litigioso permite al deudor extinguir la obligación mediante el reembolso al cesionario del precio pagado, las costas y los intereses correspondientes, siempre que el crédito haya adquirido carácter litigioso y el derecho se ejerza dentro del término dispuesto por ley. Sin embargo, dicha figura se encuentra expresamente limitada cuando se trata de la cesión de un instrumento negociable

traspasado de buena fe, por valor y antes de su vencimiento. Tal cual esbozado en el resumen doctrinal, nuestro Tribunal Supremo ha resuelto que el retracto de crédito litigioso no resulta aplicable a la cesión o venta de un pagaré hipotecario, al quedar desplazado por la Ley Núm. 208-1995. A su vez, dicho estatuto reconoce que la cesión de un instrumento confiere al cesionario los derechos del cedente para exigir su cumplimiento, incluyendo aquellos derivados de su condición como tenedor de buena fe, salvo participación en fraude o ilegalidad.

Por otro lado, al evaluar el planteamiento relativo a la alegada ausencia de buena fe de Planet Home, el mismo carece de méritos. Surge de la prueba documental sometida que Banco Santander ostentó el *Pagaré Hipotecario* como tenedor de buena fe y que este fue posteriormente endosado a Santander Financial. A su vez, al vencimiento del instrumento el 17 de agosto de 2020, Santander Financial era su tenedor y procedió a transferirlo mediante endoso a Luna Commercial. En virtud de dicha cadena de endosos, Luna Commercial adquirió el pagaré con los mismos derechos que ostentaba su cedente, incluyendo aquellos derivados de la condición de tenedor de buena fe, los cuales ejerció a través de Planet Home como administrador del crédito.

Luego de la referida transferencia, Planet Home continuó las gestiones iniciadas por el acreedor anterior y sostuvo comunicaciones con la parte apelante dirigidas específicamente a evaluar una posible renovación del *Crédito Consolidado,* incluyendo propuestas concretas sobre la tasa de interés y el plan de repago. No obstante, quedó igualmente acreditado que la razón por la cual no se formalizó acuerdo alguno fue la negativa de la parte apelante a suscribir el documento de *Sentencia por Consentimiento,* condición exigida por el acreedor para refinanciar una obligación que ya se encontraba vencida. Así pues, la evidencia presentada no refleja

actuación irrazonable ni contraria al deber de buena fe por parte de Planet Home, sino la continuidad del proceso de negociación bajo los parámetros establecidos por el acreedor del instrumento, por lo que es forzoso concluir que el señalamiento de error no se cometió.

En su quinto señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al no considerar el efecto de las consignaciones efectuadas, las cuales, según aduce, fueron aprobadas por el Tribunal sin oposición de las partes demandadas.

Según previamente esbozado, la consignación constituye una de las formas de pago reconocidas en nuestro ordenamiento jurídico y se define como el depósito judicial de la cosa debida. No obstante, para que la consignación produzca el efecto de liberar al deudor de su obligación, esta debe cumplir estrictamente con los requisitos establecidos en el Artículo 1131 y 1132 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 9181 y 9182. En particular, corresponde al deudor demostrar que el acreedor se negó, sin razón, a recibir el pago, o que concurría alguna de las circunstancias expresamente previstas por la ley para justificar la consignación.

En el caso ante nuestra consideración, advertimos que la parte apelante no estableció que las consignaciones efectuadas respondieran a una negativa injustificada del acreedor a recibir el pago ni a cualquiera de los supuestos legalmente reconocidos que habilitan la consignación. Por el contrario, del expediente surge que las consignaciones se realizaron de forma unilateral, sin demostrarse que se tratara de un ofrecimiento de pago ajustado a los términos de la obligación ni que el acreedor hubiera rechazado dicho pago sin causa justificada. En consecuencia, el planteamiento de la parte apelante en cuanto a que dichas consignaciones debían producir efectos liberatorios carece de mérito, y no se advierte error alguno en la determinación del Tribunal de Primera Instancia al no otorgarles el efecto jurídico que pretende la parte apelante.

En conclusión, del expediente que nos ocupa podemos constatar que las determinaciones realizadas por el Tribunal de Primera Instancia están respaldadas en los documentos presentados. De hecho, en su labor meticulosa, el Juzgador detalló la documentación que evidenciaba cada una de sus determinaciones de hechos. Además, la *Sentencia* apelada interpreta y aplica de manera correcta la normativa vigente en nuestro estado de derecho, a la luz de la prueba que fue presentada ante el foro de primera instancia. De este modo, por no haber controvertido los hechos establecidos por los apelados, resolvemos que no existe controversia de hechos alguna sobre la corrección del dictamen apelado.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones